**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-5**

THOMAS ALEXANDER PORTER,

Petitioner - Appellant,

v.

DAVID ZOOK, Warden, Sussex I State Prison,

Respondent - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, Senior District Judge. (3:12-cv-00550-JRS)

Argued: September 16, 2015          Decided: October 20, 2015

Before SHEDD, THACKER, and HARRIS, Circuit Judges.

Dismissed and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Shedd and Judge Thacker joined.

**ARGUED:** Dawn Michele Davison, VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Charlottesville, Virginia, for Appellant. Matthew P. Dullaghan, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Robert Lee, Lindsey Layer, VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Charlottesville, Virginia; Brian K. French, NIXON PEABODY, LLP, Boston, Massachusetts; Trey Kelleter, VANDEVENTER BLACK, LLP, Norfolk, Virginia, for Appellant. Mark R. Herring, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

Thomas Alexander Porter appeals from a district court order dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Among the multiple claims Porter presented to the district court was one alleging that a juror in his case was "actually biased," in violation of his right to trial by an impartial jury. See Smith v. Phillips, 455 U.S. 209, 215 (1982). Because the district court did not resolve that claim, its decision was not a final order over which we have jurisdiction. Accordingly, we must dismiss Porter's appeal and remand for adjudication of Porter's actual bias claim.

## I.

In 2005, Porter shot and killed police officer Stanley Reaves in Norfolk, Virginia. On the afternoon of the murder, Porter and another man were at the apartment of a female acquaintance, along with her two daughters and other family members, attempting to purchase marijuana. Officer Reaves was called to the scene after Porter began to brandish a semi-automatic pistol and threatened to shoot the women in the apartment. When Officer Reaves confronted Porter just outside the apartment, Porter drew his pistol, then concealed on his

person, and shot Officer Reaves three times.   Porter then took

Officer Reaves's pistol and fled.[1]

After a month-long manhunt led to his capture, Porter was

indicted in the Circuit Court of the City of Norfolk on multiple

charges.   The most serious was a charge of capital murder, for

the intentional killing of a police officer in order to

interfere with the performance of his official duties.   See Va.

Code § 18.2-31.6.

As was to be expected, Officer Reaves's senseless killing

provoked widespread mourning and outrage in Norfolk and the

surrounding communities.   The killing also generated extensive

media coverage, both during the manhunt for Porter and after his

apprehension and indictment.   Citing concerns about the ability

to empanel an impartial jury in Norfolk, Porter filed a motion

for a change of venue, to which the Commonwealth consented.   The

Norfolk court granted the motion and transferred Porter's trial

to the Circuit Court of the County of Arlington.

Porter ultimately was convicted of three counts, including

capital murder.   At the sentencing phase, the jury found the

---

[1] The facts surrounding Porter's crime and the extensive proceedings related to this case are detailed in the decision of the Supreme Court of Virginia affirming Porter's conviction and sentence, Porter v. Commonwealth, 661 S.E.2d 415 (Va. 2008), as well as the decision of the district court dismissing Porter's petition for federal habeas relief, Porter v. Davis, No. 3:12-CV-550-JRS, 2014 WL 4182677 (E.D. Va. Aug. 21, 2014).

aggravating factor of future dangerousness, see Va. Code § 19.2-264.2, and sentenced Porter to death for capital murder. Porter appealed his capital conviction and death sentence, and the Supreme Court of Virginia affirmed both. Porter then filed a petition for state habeas post-conviction relief in the Supreme Court of Virginia, which dismissed the petition.

After the conclusion of state court proceedings, Porter filed the federal habeas petition that is the subject of this appeal, seeking relief under 28 U.S.C. § 2254 and raising close to twenty different claims. The Warden of Sussex I State Prison, where Porter is incarcerated, moved to dismiss. The district court granted the Warden's motion and entered an order dismissing Porter's petition. The court also issued Porter a certificate of appealability, and this timely appeal followed.

## II.

### A.

The parties to this appeal have not questioned our jurisdiction. But before we consider the merits of an appeal, we have an independent "obligation to verify the existence of appellate jurisdiction." Palmer v. City Nat'l Bank, of W. Va., 498 F.3d 236, 240 (4th Cir. 2007). And that jurisdiction generally is limited to appeals from "final decisions of the district courts," 28 U.S.C. § 1291 — decisions that "end[] the

4

litigation on the merits and leave[] nothing for the court to do but execute the judgment." Miller v. Simmons, 814 F.2d 962, 964 (4th Cir. 1987) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978)).

"Ordinarily, a district court order is not 'final' until it has resolved all claims as to all parties." Fox v. Baltimore City Police Dep't, 201 F.3d 526, 530 (4th Cir. 2000) (emphasis added). In making that assessment, we look to substance, not form. Regardless of the label given a district court decision, if it appears from the record that the district court has not adjudicated all of the issues in a case, then there is no final order. See Witherspoon v. White, 111 F.3d 399, 402 (5th Cir. 1997); C.H. ex rel. Hardwick v. Heyward, 404 F. App'x 765, 768 (4th Cir. 2010) (unpublished) ("[A] district court mislabeling a non-final judgment 'final' does not make it so." (quoting Stillman v. Travelers Ins. Co., 88 F.3d 911, 914 (11th Cir. 1996))).

The same rule applies in habeas cases. See Prellwitz v. Sisto, 657 F.3d 1035, 1038 (9th Cir. 2011) (dismissing habeas appeal for lack of jurisdiction where district court failed to adjudicate all claims); United States v. Blakely, 101 F. App'x 905, 905–06 (4th Cir. 2004) (unpublished) (same). And just as the label attached to a district court order does not end our inquiry into finality, the issuance of a certificate of

5

appealability cannot by itself establish that the district court actually has resolved every claim between the parties.

In short, even if a district court believes it has disposed of an entire case, we lack appellate jurisdiction where the court in fact has failed to enter judgment on all claims. Witherspoon, 111 F.3d at 402; Hardwick, 404 F. App'x at 767–68. That is what has happened here. Because the district court did not rule on Porter's claim of actual juror bias, we must dismiss this appeal for want of jurisdiction.

**B.**

Among the myriad issues raised in Porter's § 2254 petition are two related but distinct claims, each alleging a violation of the right to trial by an impartial jury. Though their factual predicates differ slightly, both rest at least in part on the failure of one of Porter's jurors, Bruce Treakle, to disclose at voir dire that he had a brother who, like the victim in this case, was a law-enforcement officer, serving in a jurisdiction immediately adjacent to Norfolk, Virginia.

During voir dire, Porter's attorney asked potential jurors whether they or members of their "close personal family" had "worked in law enforcement in any capacity as a volunteer or an employee." Treakle raised his hand, and when called on, explained that his nephew was a police officer in Arlington, Virginia, where the trial was being held. Porter's attorney

6

asked Treakle whether this relationship would affect his ability to be fair and impartial, and Treakle responded that it would not. The attorney moved on to other prospective jurors, and Treakle did not mention any additional relatives in law enforcement.

As the district court explained, however, the record reflects that Treakle has a second and closer relative, a brother, who also worked in law enforcement, as a deputy sheriff in Chesapeake, Virginia, which borders Norfolk. That fact came to light only after Porter's direct appeal, when Porter's counsel and a law student volunteer interviewed Porter's jurors. According to an affidavit submitted by the law student, Treakle explained that the trial testimony of Officer Reaves's widow had been "moving and very emotional for him because his brother is a sheriff's officer in Norfolk."[2] J.A. 2198. After "express[ing] sympathy for law enforcement officers" who "put their lives on the line every day for the community," Treakle declined to speak further to Porter's counsel.

With this as his core factual predicate, Porter raises two separate claims regarding juror bias in his § 2254 petition. One focuses exclusively on Treakle's conduct during voir dire,

---

[2] A subsequent affidavit from Treakle's brother, Pernell, clarified that Pernell Treakle actually was a deputy sheriff in Chesapeake, Virginia, at all times relevant to this case.

7

and invokes McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548 (1984). McDonough, as we have explained, "set[s] forth a particularized test for determining whether a new trial is required in the context of juror deceit during voir dire." Jones v. Cooper, 311 F.3d 306, 310 (4th Cir. 2002). Under that test, the bar for juror misconduct is set high: Relief may be granted only if a "juror fail[s] to answer honestly a material question," McDonough, 464 U.S. at 556, and a juror's failure to elaborate on a response that is factually correct but less than comprehensive may not meet this standard where no follow-up question is asked. See, e.g., Billings v. Polk, 441 F.3d 238, 245 (4th Cir. 2006) (McDonough provides for relief "only where a juror gives a dishonest response to a question actually posed, not where a juror innocently fails to disclose information that might have been elicited by questions counsel did not ask"); Fitzgerald v. Greene, 150 F.3d 357, 363-64 (4th Cir. 1998) (no McDonough claim where juror whose granddaughter had been molested answered that no member of his family had been "raped" because attorney limited question to rape and did not ask follow-up question about molestation). Applying that standard, the district court dismissed Porter's McDonough claim, finding that the state court reasonably held that Treakle "did not volunteer false information" in a way that implicates McDonough

8

when he failed to advise of a second relative in law enforcement.

Porter's second claim is different:  Relying in part but not entirely on what he alleges was Treakle's dishonesty at voir dire, Porter also invokes Smith v. Phillips, 455 U.S. 209 (1982), and claims that Treakle was not a fair and impartial juror.  This claim of "actual bias" (sometimes called "bias in fact") is, as we have made clear, distinct from a McDonough claim.  "The McDonough test is not the exclusive test" for identifying bias, and while a McDonough claim requires a showing of juror misconduct, an actual bias claim may succeed "regardless of whether the juror was truthful or deceitful." Jones, 311 F.3d at 310; see also Fitzgerald, 150 F.3d at 364 (considering McDonough and actual bias claims independently). And of special relevance here, one factor that may give rise to distinct concerns about actual bias is a personal relationship that colors a juror's perspective on a case, see Fields v. Woodford, 309 F.3d 1095, 1103-06 (9th Cir. 2002) (remanding for hearing on actual bias where juror's wife had been a victim of violent crime and district court had relied only on McDonough in rejecting bias claim) — including a relationship with a family member in law enforcement, see United States v. Scott, 854 F.2d 697, 698-700 (5th Cir. 1988) (ordering new trial where juror's failure to disclose that his brother was a deputy sheriff raised

9

"a genuine prospect of actual bias," regardless of whether juror's voir dire answers were dishonest under McDonough).

As is to be expected, the thrust of Porter's actual bias claim differs from that of his claim under McDonough. To show actual bias, Porter relies not only on Treakle's conduct at voir dire, but also on the allegation that Treakle's relationship with his brother actually "impacted his perception of the evidence and his participation in deciding Porter's guilt and punishment," as reflected by Treakle's admission that he was especially moved by the testimony of Officer Reaves's widow because his brother was a sheriff's officer from the same area as Officer Reaves. Porter also draws on the fact that his trial was moved from Norfolk because of concerns about juror bias, and on the allegation that Chesapeake law enforcement was especially affected by the death of Officer Reaves (who lived with his family in Chesapeake and was killed in next-door Norfolk) and participated in the extended manhunt for Porter. All told, Porter argues, there is enough to support a finding that "Treakle was actually biased against him," or, at a minimum, to entitle him to an evidentiary hearing on actual bias. J.A. 3699 & n.3.

The Warden, for his part, defends against Porter's actual bias claim separately and on the merits in his motion to dismiss. Focusing on Treakle's statements to Porter's counsel,

10

as alleged in the law-student affidavit, the Warden argues that bias in fact cannot be shown simply because Treakle responded favorably to the "obviously moving" testimony of Officer Reaves's widow.

Notwithstanding these arguments, the district court dismissed Porter's petition without ruling on or seeming to recognize Porter's actual bias claim. Instead, the portion of the court's opinion devoted to juror bias addresses only the McDonough test for juror misconduct during voir dire, dismissing Porter's McDonough claim for the reasons discussed above. It does not acknowledge a distinct actual bias claim, and it never passes on a central component of that claim: the law-student affidavit that has Treakle drawing a connection between his relationship with his brother and his response to certain trial testimony.[3]

---

[3] The district court did observe that even if Treakle had "failed to answer honestly a material question" under McDonough, Porter would be unable to satisfy McDonough's requirement that an honest answer "would have provided a valid basis for a challenge for cause," 464 U.S. at 556, because he could not show that the trial court would have dismissed Treakle for "actual or implied bias." The court went on, however, to consider only whether Porter's allegations were sufficient to warrant an imputation of bias under the "doctrine of implied bias," without any analysis of actual bias. Whether or not consideration of actual bias as a component of a McDonough claim suffices to dispose of a freestanding actual bias claim, no such consideration is apparent here.

Our point here is not to fault the district court; Porter's petition contains a multitude of claims, some of which have multiple subparts, and it is easy to see how one "variation[]" of a juror bias claim, Jones, 311 F.3d at 310, could be overlooked. And we of course express no view as to the merits of Porter's actual bias claim. But we are constrained to agree with Porter that the district court did not adjudicate his actual bias claim.

Because the district court failed to rule on Porter's actual bias claim, it never issued a final decision on Porter's habeas petition. We therefore lack jurisdiction and must dismiss Porter's appeal. We remand the case to the district court so that it can decide Porter's actual bias claim. On remand, the district court may consider any argument or defense properly raised by Porter or the Warden, and may conduct an evidentiary hearing or any other proceedings it deems necessary to resolve the claim.

**III.**

We dismiss Porter's appeal and remand to the district court for consideration of Porter's actual bias claim. We express no opinion regarding the district court's dismissal of Porter's other claims.

DISMISSED AND REMANDED